Assault and battery; sentence: six months' imprisonment in the Mobile County Jail.
Patricia Rutherford testified she was a student at the University of South Alabama Medical School on September 19, 1979, shortly after the occurrence of a severe hurricane. After a disagreement with her boyfriend that night, Ms. Rutherford left her apartment, which was without electrical power or potable water because of the hurricane, and walked about three miles to the University Medical School building, which had auxiliary power. After a short stay there Ms. Rutherford began to walk home. As she was walking, a "1965 or 1967" Chevrolet pulled up beside her driven by the appellant. He said, "Don't you know you're out after curfew. The police will pick you up and put you in jail. You better let me take you home." The appellant was dressed in the national guard uniform which she had seen worn by guardsmen all week in the aftermath of the hurricane. She got into the car and began to direct him to her apartment, indicating appropriate turns at intersections, but without letting him know her ultimate destination. After entering the vehicle, she noticed a rifle standing beside the appellant with the barrel pointed toward the roof. On making a turn, appellant said, "Let me get this thing out of the way," and placed the rifle on the seat with the barrel facing toward the right front tire and the butt toward appellant.
Ms. Rutherford became nervous when appellant failed to heed her instructions to turn at one point, and began to get out of the slowly moving vehicle. As she put her foot out the door, appellant grabbed her and said, "You're not going anywhere." The first thing Ms. Rutherford remembered was hearing and feeling a gunshot in the abdomen. Next she recalled coming to, and lying on the ground with appellant choking her. She started to scream and the appellant put his hand over her mouth. She tried to bite him and he said, "Go ahead and bite it." Again she passed out and reawakened with him choking her.
Donald Robert Oglesby testified that he and his companion, Charles Jackson, observed two parked vehicles on the evening of September 19, 1979. Thinking one of the vehicles had car trouble, Oglesby drove toward the two vehicles. As they approached the vehicle, Oglesby stated he heard two gunshots. The second vehicle then backed up and drove off. Oglesby leaned out his front window and asked what was the trouble. A man, identified as appellant, called out to get medical attention and stay back. A man in another vehicle who was with civil defense arrived at that time and called for help. Oglesby approached the appellant's vehicle and observed appellant leaning over the victim. Appellant instructed him to stop traffic. Oglesby stopped the first vehicle and got its occupant to direct traffic. He returned to the appellant and victim, and saw that the appellant had his hands around the victim's neck. When he walked up, appellant pulled his hands away. Oglesby also stated he observed an M16 rifle on the front seat of appellant's automobile. Appellant told Oglesby that the girl had attempted to jump out of the automobile and the gun accidentally went off as he tried to stop her. The victim told him appellant shot her as she attempted to jump out of the vehicle.
William C. Garrett, the first police officer on the scene, testified appellant appeared to be supporting the victim's head with his hands when he arrived. The victim had sustained a gunshot wound to her lower body, and appeared to be talking out of her *Page 210 
head. Officer Garrett observed that appellant had a slight odor of alcohol on his breath.
Charles Sullivan, a Mobile City policeman, stated he was also at the scene of the shooting. He observed an M16 automatic rifle on the front seat of appellant's vehicle. He photographed the weapon on the seat, and then removed it and two empty rounds of ammunition. He kept the weapon with him until he turned it in as evidence at the docket room. He observed, at the scene, that the rifle had a device that prevented it from firing in the automatic position. Later, he recorded the serial number as 297917 upon turning the rifle in as evidence. He stated he could identify the weapon if he saw it again. Officer Sullivan was shown a rifle at trial and identified it as the same as the one he removed from appellant's vehicle, despite the fact that the serial number it bore was 297912.
The record reflects that after the witness stated he was sure the rifle was the correct weapon, the trial judge stated the weapon should be admitted into evidence.
Dr. Robert Bucher testified concerning the wounds Ms. Rutherford received. The bullet entered the abdomen and exited from the left leg. Ms. Rutherford also evidenced bruising and scratching about her neck which appeared to be caused by human hands.
Charles Park, a sergeant major in the United States Army, was qualified as an expert on the M16 rifle. He testified that the rifle introduced at trial was blocked to prevent it from firing in the automatic position.
At the close of the State's case, appellant moved to exclude the State's evidence for failure to prove a prima facie case and also moved to require the State to elect which theory of assault was to be submitted to the jury, i.e., the gunshot or the strangulation. Appellant's motion was denied and appellant took the stand to testify in his own behalf.
Appellant denied shooting or strangling the victim. He stated the gun fired accidentally as he reached to grab Ms. Rutherford because he thought she was accidentally falling out of the vehicle. He testified his statement to her at the time she appeared to be falling was, "You're not going to fall out of the car." The defense rested at the close of the appellant's testimony.
 I
Appellant contends the trial court erred in refusing to grant his motion to require the State to elect which criminal act the State intended to prove as the basis of the offense charged in the indictment. The failure to require the State to elect, appellant argues, allowed appellant to be tried for two separate and distinct actions under a single count of the indictment. If evidence of the alleged second separate criminal act of choking the victim was allowed, appellant contends, the trial court should have instructed the jury that such evidence was only admissible to show the intent of the appellant in perpetrating the simple criminal act of shooting the victim.
Reviewing the evidence in the light most favorable to the State, it appears appellant shot the victim, who then fell out of the automobile. Within a matter of minutes, appellant had disembarked the vehicle and was observed by the victim and at least one other witness in the act of choking Ms. Rutherford. The exact time span which elapsed between the two modes of assault upon the victim is unclear from the record. However, the record is clear that there was but one assault and battery which occurred, although appellant chose more than one method of carrying out his criminal activity.
The indictment appears in the record as follows:
 "The GRAND JURY of said County charge, that, before the finding of this indictment WILLIAM WALTER DYESS whose name is to the Grand Jury otherwise unknown than as stated, unlawfully and with malice aforethought, did assault Patricia Rutherford with the intent to murder her, against the peace and dignity of the State of Alabama." *Page 211 
Appellant concedes that assault and battery is a lesser included offense of assault with intent to murder. Wilson v.State, 53 Ala. App. 653, 303 So.2d 153 (1974). There is but one crime charged in the single-count indictment. The specific mode or manner in which the assault was carried out is not specified by the indictment.
The rule requiring the state to elect appears in Deason v.State, 363 So.2d 1001 (Ala. 1978), as follows:
 "The doctrine of election operates to protect a defendant from being prosecuted for more than one offense in the same count of an indictment. Where the evidence discloses two or more offenses growing out of distinct and separate transactions, a court should grant a timely motion to require the State to elect. (citations omitted)"
The evidence in the instant case does not require the application of the rule requiring election. The indictment did not charge, nor did the State's evidence prove, two separate and distinct offenses growing out of separate and distinct criminal transactions.
Additionally, both acts were part of one continuous criminal occurrence and everything done was admissible as part of the res gestae. Lambert v. State, 48 Ala. App. 600, 266 So.2d 812
(1972). Even if the two acts are viewed as separate crimes, they were admissible for the purpose of showing scienter, intent, and motive. Lambert, supra. The record does not reflect that appellant sought a charge limiting the introduction of the evidence of the choking to one of the above purposes. There was no error in the trial court's refusal to grant appellant's motion to require election.
 II
The appellant maintains that the rifle allegedly used to shoot the victim was improperly admitted because the State failed to prove a complete chain of custody. He argues that the State failed to show control over the weapon after it was taken from the scene or that it was the weapon.
Although the rifle appears to have been admitted by the court without an offer to introduce it by the State, appellant failed to make a specific objection to the introduction of the evidence based upon failure of the State to establish a proper chain. A general objection to evidence subject to specific objection is properly overruled. Thornton v. State, 55 Ala. App. 462, 316 So.2d 710 (1975). No error results in overruling a general objection unless the evidence is illegal for any purpose, and cannot be made legal by other evidence, or by supplying additional evidence. Moates v. State, 40 Ala. App. 234, 115 So.2d 277, cert. denied, 269 Ala. 698, 115 So.2d 282
(1959). Because it was possible that the State could have provided further evidence to establish the chain at that point, and because the rifle was relevant to the commission of the crime, the judge's ruling was not in error. Sprinkle v. State,368 So.2d 554 (Ala.Cr.App.), cert. quashed, Ala., 368 So.2d 565
(Ala. 1978). Since no proper objection was made at the time the rifle was admitted into evidence, appellant's later, more specific objections came too late. Murrell v. State,377 So.2d 1102 (Ala.Cr.App.), cert. denied, 377 So.2d 1108 (Ala. 1979).
All other objections made by appellant concerning testimony about the rifle were either sustained, or came too late and were not followed by a motion to exclude the testimony.
While the State did not establish a complete chain of custody for the rifle, we find no harm to appellant by the rifle's reception into evidence. Appellant admitted he accidentally shot the victim with an M16 National Guard rifle. Expert testimony indicated National Guard M16's were blocked to prevent automatic repeat firing. Officer Sullivan testified he was sure the weapon was the same one he obtained from the front seat of appellant's vehicle the night of the assault. Officer Sullivan also testified the weapon was in the same condition at trial as when he originally obtained the rifle. Therefore, the admission of the rifle into evidence was not error. Douglas v.State, 366 So.2d 373 (Ala.Cr.App. 1979); *Page 212 Gentry v. State, 344 So.2d 1246 (Ala.Cr.App.) cert. denied,344 So.2d 1249 (Ala. 1977).
We have examined the record for error and have found none. Therefore, the judgment of conviction by the Mobile Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.