On September 14, 2000, Roy Lee McCall was convicted of first-degree robbery, a violation of 13A-8-41, Ala. Code 1975. On October 10, 2000, the trial court sentenced McCall to life in prison. On October 16, 2000, McCall filed a written notice of appeal and a motion for a new trial. The trial court denied the motion for a new trial on October 31, 2000.
The record showed that on October 20, 1998, Mr. Ngo, the owner of Ken's Food Store in Dothan, reported that he had been robbed. Ngo testified that the robber shot at him with a gun. Ngo identified McCall in open court as the robber.
 I.
First, McCall contends that the trial court erred in permitting, over McCall's objection, Ngo's daughter to act as interpreter when Ngo testified. We disagree.
Teresa McDaniel, Ngo's daughter, testified that, if the need occurred, she could translate for her father the attorneys' exact questions in Vietnamese, and then translate his answer into English. McDaniel stated that her relationship with her father was good and that the robbery "affected [her] personally for [her] father." (R. 41.) McCall objected to the State's motion that McDaniel be allowed to interpret, if necessary, during Ngo's testimony on the grounds that "the interpreter is the daughter, the blood relative of the victim. And as stated in her response to my questions, she has a personal feeling about the case. And that's not an unbiased interpreter." (R. 41.) The trial court overruled McCall's objection.
"The selection and qualification of an interpreter is within the sound discretion of the trial judge and his decision on this matter should not be overturned absent an abuse of his discretion." Hooks v. State,534 So.2d 329, 356 (Ala.Crim.App. 1987). The trial judge is in the best position to observe the interpreter and to determine the interpreter's qualifications. See Robinson v. State, 444 So.2d 902, 904 (Ala.Crim.App. 1984). It is well-settled law in Alabama that the interpreter does not have to be the "least interested person available." Hooks v. State, 534 So.2d at 356 (employee of the district attorney's office acted as interpreter). See also Robinson v. State, 444 So.2d at 904 (interpreter *Page 675 
was the teacher and friend of the victim-witness); Almon v. State,21 Ala. App. 466, 109 So. 371 (1926) (interpreter was the mother of the victim-witness); Burgess v. State, 256 Ala. 5, 53 So.2d 568 (1951) (interpreter was brother of witness). We find no abuse of discretion.
In his brief to the Court, McCall cites Prince v. Beto, 426 F.2d 875
(5th Cir. 1970). McCall's reliance on Prince, however, is misplaced. The facts of this case are easily distinguished from Prince. In Prince, (1) the victim was a rape victim, (2) the interpreter was her husband, (3) the victim's testimony was the only testimony presented against the defendant, and (4) the husband had offered to stop the prosecution in exchange for money.
Moreover, even if the trial court abused its discretion in allowing McDaniel to act as interpreter for her father, the only time McDaniel was actually used as an interpreter was at McCall's request. Ngo testified on direct examination without an interpreter. During cross-examination, McCall asked McDaniel to read from a transcript of a prior hearing to refresh Ngo's recollection about statements he had made to the police regarding whether he said there had been an eyewitness on a pay phone outside the store at the time of the robbery.
 "MR. PARKER [defense counsel]: Judge, may I have the interpreter to read this for him?
"THE COURT: Okay. Go ahead.
 "MR. MAXWELL [prosecutor]: May I ask what page we are referring to?
 "MR. PARKER: One thirty-seven and [line] thirteen. Answer would be on [line] fifteen, and this would be from the reporter's official transcript of a previous hearing.
 I'll ask you to read line thirteen. And when you see a question, if you would state question. And then read the question? And when you see answer, read answer. Start there, if you would, please.
 "MR. PARKER: Mr. [Ngo], let me ask you if this helps you to recall your previous testimony.
 "INTERPRETER: Do you want me to read the question to the jury?
"MR. PARKER: To your father. Translate for us, please.
 "INTERPRETER: I told him the question, that Roy McCall came into the store before the robbery. The answer I told my father, that he hasn't came in yet. That he is walking around outside the store, and there is somebody on the phone saw him put the mask on."
(R. 60-61.) McCall then questioned Ngo about the previous testimony. McCall, not the State, used McDaniel as an interpreter. Thus, if McCall suffered any harm from the use of McDaniel as interpreter, he invited it. "A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or that were a natural consequence of his own action." Taylor v. State, 808 So.2d 1148, 1202 (Ala.Crim.App. 2000) (internal citation omitted), aff'd, 808 So.2d 1215 (Ala. 2001).
 II.
Second, McCall argues that the trial court erred in denying his motions to allow an inmate defense witness to testify without shackles and wearing civilian clothes. The State contends that McCall failed to show that he was prejudiced by the trial court's decision. We agree with the State.
McCall filed a motion seeking to have a defense witness who was an inmate testify without shackles and wearing street clothes. Though the record is silent, we *Page 676 
presume that the trial court denied McCall's motion, because McCall also filed a motion to reconsider his motion to allow the inmate defense witness to testify unshackled and wearing street clothes. The trial judge denied McCall's motion to reconsider.
At trial, McCall called Brown, the inmate witness, to testify. McCall asked Brown, "And it is obvious, Mr. Brown, that you are in custody. You have handcuffs and shackles on; is that correct?" (R. 210.) Brown testified that he was in prison for third-degree burglary. On cross-examination, the State elicited testimony about Brown's conviction and the fact that he was incarcerated.
Although it is well-settled that, absent certain circumstances, a defendant should not be restrained, the matter of restraining an inmate witness has not been decided in Alabama. Other states have held that it is not necessarily as prejudicial to shackle a witness as to shackle the accused. See Ohio v. Keenan, 81 Ohio St.3d 133, 689 N.E.2d 929 (1998) (less prejudice in handcuffing a witness than a defendant); Washingtonv. Rodriguez, 103 Wn. App. 693, 14 P.3d 157 (2000) (though there is some inherent prejudice, shackling a witness may not directly affect the presumption of innocence).
However, the Florida District Court of Appeals addressed this issue inJackson v. Florida, 698 So.2d 1299 (Fla.Ct.App. 1997), when that court held:
 "Most courts use the same analysis to assess the propriety of physical restraints on defense witnesses as they use for criminal defendants themselves. The decision whether to shackle a defense witness is left to the discretion of the trial court, subject to the same considerations that would apply to the physical restraint of a defendant."
Jackson v. Florida, 698 So.2d at 1303 (internal citations and quotation marks omitted).
"Bringing a prisoner before the bar of justice in handcuffs or shackles, where there is no pretense of necessity, is inconsistent with our notion of a fair trial." Brock v. State, 555 So.2d 285, 288
(Ala.Crim.App. 1989), on return to remand, 580 So.2d 1390 (Ala.Crim.App. 1991). The decision to restrain a defendant rests with the trial judge, and, absent an abuse of discretion, this Court will not disturb his ruling on appeal. Id. at 289. "Ultimately, however, it is incumbent upon the defendant to show that less drastic alternatives were available and that the trial judge abused his discretion by not implementing them."Id. (internal citation and quotation marks omitted). "It is not always reversible error for a defendant to be handcuffed or shackled in front of the jury." Perkins v. State, 808 So.2d 1041, 1179 (Ala.Crim.App. 1999), aff'd, 808 So.2d 1143, 1145 (Ala. 2001).
Because McCall, in his brief, relies on Arthur v. State, 575 So.2d 1165
(Ala.Crim.App. 1990), cert. denied, 575 So.2d 1191 (Ala. 1991), it is important to distinguish this case from Arthur. In Arthur, the only mention of restraining an inmate witness was made in dictum:
 "In regard to the issue concerning the handcuffing of a defense inmate witness during his testimony when none of the prosecution's inmate witnesses were similarly restrained (although one had possibly more than 50 convictions and had been imprisoned since 1967, with the exception of a total of 2 years), in the event of a retrial, the trial court should note, in the record, the reason for restraining or not restraining each inmate witness. Moreover, efforts should be made to alleviate, or at least minimize, any opportunity for the jury to see *Page 677 
 the inmate witness's restraints; for example, the trial court could order a recess before and after the witness's testimony so that the witness can be seated and removed from the witness stand outside the jury's presence."
Arthur v. State, 575 So.2d at 1186. In Arthur, both the State and the defendant presented inmate witnesses, yet only the defense's inmate witness was in restraints, despite the fact that at least one of the prosecution's inmate witnesses had had more than 50 convictions. Though this Court noted the potential prejudice that might arise where an inmate witness is shackled during his testimony, we reversed the conviction and remanded that case on other grounds, and thus declined to address the issue in detail. Though this Court still believes the guidelines recommended in dictum in Arthur are proper for the trial court to follow, they were not intended to be inclusive or a final determination on the issue here.
Shackling a testifying defendant is not always reversible error, and the same is true with regard to shackling an inmate witness. Though the trial judge failed to state his reasons for requiring Brown to testify in shackles and prison clothing, McCall has failed to show that he suffered any prejudice by the trial judge's denying his motions.
Moreover, McCall elicited testimony from Brown about his conviction and current residence, and the State was allowed to impeach Brown with evidence of his conviction. Thus, any error in the trial court's ruling would have been harmless, as the jury learned through the testimony McCall elicited that Brown was incarcerated at the time of trial. Rule 45, Ala.R.App.P.
 III.
Next, McCall contends the trial court erred by allowing the State to cross-examine a defense witness about collateral matters. McCall elicited evidence that Brown, a defense witness, was serving time for a conviction of burglary; he also elicited details of the offense. On cross-examination, the State asked Brown if he had denied committing the burglary. McCall objected on grounds that the question was not relevant and that it was outside the scope of direct examination. The trial judge overruled McCall's objection, and stated that McCall had opened the door to questions about Brown's conviction. The State introduced, without objection, an audiotape of Brown telling police that he did not commit the burglary and that he had alibi witnesses.
Although defense counsel objected to the State's initial question to Brown about his statement to police, McCall did not request that further objections be unnecessary, or that the objection be considered continuing. Any error by the trial judge in overruling McCall's initial objection was made harmless by the admission of the audiotape and the subsequent questioning without another objection or a continuing objection. See Baker v. State, [Ms. CR-95-0292, Jan. 12, 2001] ___ So.2d ___, ___ (Ala.Crim.App. 2001).
 IV.
McCall argues that the trial court erred when, according to McCall, it refused to allow defense counsel to withdraw a question and then required a State witness to testify about conclusory and inadmissible matters. During McCall's cross-examination of Officer Meredith, the following exchange occurred:
 "Q: I'll start from the most recent report. Why did [the informant] change her mind about not wanting to testify? *Page 678 
 "Mr. Maxwell [prosecutor]: And I'm going to object for the record. That calls for a conclusion on his part as to her own mental operation.
 "Mr. Parker [defense counsel]: I'll rephrase the question.
"The Court: Okay.
"Mr. Maxwell: Okay. I withdraw it. Tell him why.
"The Court: If he knows, I mean —
"Mr. Maxwell: He knows.
"The Court: Go ahead.
 "A: She stated to me that she knew that Mr. McCall did the robbery —
"Q: Let me just ask you if —
"A: I'm answering the question —
 "Mr. Maxwell: Judge, I object. He asked him a question.
"The Court: Just a minute.
 "Mr. Parker: I stated that I would rephrase the question.
 "The Court: I understand. And I think Mr. Maxwell withdrew his objection, so the question stands. And, obviously, if you open the door to something, it comes in. So overruled. Go ahead.
"A: She stated that she —
 "Mr. Parker: I'm not asking for hearsay, your Honor.
 "The Court: Well, you asked why. And why can call for any number of reasons. Overruled.
 "A: [The informant] told me that she knew that Roy McCall did the robbery, and that he got away with it in the first trial because it was a mistrial. And this time she wanted to get involved with it."
(R. 111-12.)
McCall did not raise at trial the grounds he now argues on appeal. Thus, this issue has not been preserved for our review. Meadows v.State, 773 So.2d 1053, 1054 (Ala.Crim.App. 2000).
Moreover, even had this issue been preserved, we would still find McCall's argument to be without merit. It is well settled that lawyers may withdraw questions. See Hereford v. State, 608 So.2d 439, 440
(Ala.Crim.App. 1992). However, McCall never attempted to withdraw the question. He merely offered to rephrase it. The State withdrew its objection, and the trial judge allowed the witness to answer the question. McCall, not the State, invited the error when he asked the question. "A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or that were a natural consequence of his own action." Taylor v. State supra 808 So.2d at 1202.
For the above-stated reasons, McCall's conviction and sentence are due to be affirmed.
AFFIRMED.
McMillan, P.J., and Baschab, Shaw, and Wise, JJ., concur.