[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1182 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1183 
The grand jury of Tuscaloosa County returned a six-count indictment against Olin Dale Hulsey. Count one of the indictment charged Hulsey with attempting to cause the death of his wife, Megan Francis Ray, "by starting a fire within a residence occupied by said Megan Francis Ray, and/or by striking her head against a countertop and/or beating her with a wooden bannister" or similar object. (C. 9.) Counts two and three of the indictment charged Hulsey with attempting to murder two of his three children, by starting a fire within a residence they occupied. Count four of the indictment charged Hulsey with burglary in the first degree. Counts five and six of the indictment charged Hulsey with attempting to commit arson in the first degree and with criminal mischief in the first degree, respectively. After a jury trial Hulsey was convicted of assault in the second degree as a lesser offense to the offense of the attempted murder of Ray; burglary in the first degree; attempt to commit arson in the first degree; and criminal mischief in the first degree. He was acquitted of the two counts of the attempted murder of his children. He was sentenced to 3 years in prison for the assault-in-the-second-degree conviction, 15 years in prison for the burglary-in-the-first-degree conviction, 10 years in prison for the attempt-to-commit-arson conviction, and 3 years in prison for the criminal-mischief conviction. He raises three issues on appeal.
Because Hulsey's issues concern questions of law or procedure, a lengthy detailed discussion of the facts is unnecessary. For purposes of this appeal the following statement of facts is sufficient.
The charges underlying this appeal arose as the culmination of what was apparently a tumultuous relationship between Hulsey and his wife Megan Francis Ray. Though married only 14 months, the couple had had three young children together, ages 5, 3, and 1, respectively. At the time of the incident, divorce proceedings were pending, and Ray had been allowed to remain in the couple's home. A restraining order had been issued ordering, among other things, that Hulsey stay away from Ray's home and from her workplace. At approximately 1:00 a.m., on May 15, 2000, Ray was inside her home with her children and a female friend, Connie Griffin. Hulsey arrived and entered the home. The evidence, though disputed in some respects, indicates that Hulsey became agitated with Ray and that he physically attacked her. There was conflicting evidence as to whether Ray or Hulsey initiated the physical altercation, but Ray sustained injuries consistent with her testimony that Hulsey struck her numerous *Page 1184 
times with his fist and with a bannister, and that he had slammed her face into the kitchen countertop. After throwing Griffin and Ray out of the house, Hulsey placed some clothes on top of the stove and lit the stove. Ray said she reentered the house to remove the clothes from the stove, which according to Ray, were in flames, and to stop the fire because two of her children, were still inside the house. She also testified that she sustained burns when she put out the fire. However, Hulsey testified that he had second thoughts about the fire and that he turned the stove off and removed the smoldering clothes from the stove before a fire actually erupted.
During the melee inside the house, David Griffin, Connie Griffin's adult son, arrived. When Hulsey left the house he threw a log through the windshield of David Griffin's car. Hulsey intentionally crashed his truck into and damaged the automobile Ray had rented while the divorce was pending. Jimmy Hannah, David Griffin's brother-in-law, arrived and Hulsey chased him down the driveway. However, Ray and the children were able to get into Hannah's car, and they were taken to safety.
 I.
Hulsey contends that the trial court erred in refusing to dismiss the charge of attempted murder as to Ray because this charge violated his right under the Fifth Amendment to the United States Constitution and Art. I, § 9, Ala. Const. of 1901, not to be twice placed in jeopardy for the same offense.[1]
 "The concept of double jeopardy `protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted [in Kuk])."
Kuk v. State, 602 So.2d 1213, 1219 (Ala.Crim.App. 1992). Specifically, Hulsey contends that the instant prosecution was "a second prosecution for the same offense after conviction." Id. "`[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.'" Ex parte Staten, 622 So.2d 1321,1323 (Ala. 1992) (quoting Grady v. Corbin, 495 U.S. 508, 521 (1990).
According to Hulsey, after the incident with Ray on May 15, 2000, he was convicted in the district court of Tuscaloosa County of third-degree assault as to Ray, a violation of a § 13A-6-22(a)(1), Ala. Code 1975. He appealed this conviction to the Tuscaloosa Circuit Court for a trial de novo. The State filed a motion in the circuit court to "dismiss the case" (R. 37.), which the trial court granted. Hulsey was not given an opportunity to be heard before the dismissal. The State then obtained an indictment against Hulsey for the attempted murder of Ray, a violation of §§ 13A-6-2 and 13A-4-2, Ala. Code 1975.
Hulsey filed a pretrial motion to dismiss the charges filed against him, claiming that the charges lodged in the circuit court were based on the same conduct as the *Page 1185 
conduct underlying his district-court conviction for third-degree assault. Thus, Hulsey argued that his double-jeopardy right was violated because, he said, he was being tried a second time for the same conduct after having been convicted for his actions regarding the incident of May 15, 2000. A hearing was conducted on his double-jeopardy claim before the trial began. Hulsey narrowed his argument at this time, arguing that count one of the indictment, the attempted-murder charge concerning Ray, should be dismissed on double-jeopardy grounds because he had already been convicted in the district court for assault in the third degree based on the same conduct underlying the attempted-murder charge.
The record does not disclose the basis of the State's motion to dismiss the de novo appeal in the circuit court. However, the State did not dispute Hulsey's accusations that the State sought the dismissal so it could obtain an indictment charging a greater offense. The State argued in response to Hulsey's motion that it had the right to prosecute Hulsey in the circuit court for attempted murder because Hulsey had appealed from the district-court conviction for a trial de novo in the circuit court. According to the State, the appeal to the circuit court "erased" the district-court conviction as if it had never happened, and, thus, the State could move to dismiss the original charge filed in the district court and recharge Hulsey in the circuit court with the greater offense of attempted murder.
The circuit court agreed with the State. The court specifically ruled that Hulsey's appeal for a trial de novo "nullified the conviction in the district court" and that "the State did have the right to dismiss and recharge if they chose." (R. 36.) Thus, according to the circuit court, there were no double-jeopardy considerations. The court denied Hulsey's motion to dismiss the attempted-murder charge.
After the trial court ruled on the motion to dismiss, the State offered the following argument:
 "[T]he second argument that the State would put forward is that even if there were an assault third degree which was adjudicated on this incident, that would be separate and apart from the attempted murder. It would be a separate event. There were many assault thirds that happened there but there was also an attempted murder that happened there, just for the record."
(R. 40.) The trial court responded "Okay" and began empaneling the jury. (R. 41.)
The trial court erred in granting the State's motion to dismiss Hulsey's appeal to the circuit court for a trial de novo. "Except as provided in Section 12-12-72 and in subsection (e) of Section 12-15-120, all appeals from final judgments of the district court shall be to the circuit court for trial de novo." § 12-12-71, Ala. Code, 1975. The statute and rule governing an appeal from a municipal or district court for a trial de novo provide for dismissal of the appeal only upon the appellant's request or upon the appellant's failure to appear for trial. See Rule 30.5(b), Ala.R.Crim.P., and § 12-14-70(e) and (g), Ala. Code 1975. We can find no authority permitting the dismissal of a de novo appeal on motion of the State other than for failure of the appellant to appear at trial. "`"The plain wording of both § 12-14-70[(e) and (g), Ala. Code 1975,] and Rule 30.5(b)[, Ala.R.Crim.P.,] supports the appellant's contention that the circuit court has authority to dismiss a de novo appeal only when the defendant fails to appear for trial."'"Mayes v. State, 710 So.2d 537, 538 (Ala.Crim.App. 1997) (failure to appear at "plea day") (emphasis omitted) (quoting McLemore v. State,686 So.2d 492, 493 *Page 1186 
(Ala.Crim.App. 1996), quoting in turn Riddle v. State, 641 So.2d 1316,1318 (Ala.Crim.App. 1994)).
Moreover, upon proper dismissal of the appeal to the circuit court, the cause is to be remanded to the lower court "for enforcement of the lower court judgment." Rule 30.5(b), Ala.R.Crim.P.; see § 12-12-70(e) and (g), Ala. Code 1975; Gormandy v. City of Mobile, 830 So.2d 52
(Ala.Crim.App. 2001) (Rule 30.5, Ala.R.Crim.P., must be understood to be mandatory and not permissive); Ex parte Hilburn, 591 So.2d 8, 12 (Ala. 1991) (de novo appeal to the circuit court was dismissed for failure to appear and the cause remanded to the municipal court).
Additionally, until the trial de novo begins in the circuit court an appellant retains the right to submit to the lower court's ruling.
 "[A] defendant, in an appeal from a conviction in the municipal court or district court for a trial de novo
in the circuit court, has the right, prior to the empaneling of a jury or to the production of evidence in the circuit court, to submit to the judgment of the municipal court through the dismissal of his appeal and the reinstatement of the original judgment."
Ex parte Hilburn, 591 So.2d at 12.
Thus, although "`[a] trial de novo means that the slate is wiped clean and a trial in the Circuit Court is had without any consideration being given to prior proceedings in another court,'" Ex parte Dison,469 So.2d 662, 665 (Ala. 1984) (quoting Yarbrough v. City of Birmingham,353 So.2d 75, 78 (Ala.Crim.App. 1977)), an appeal for a trial de novo does not mean that the slate is thrown away. On a de novo appeal an appellant cannot "be tried in circuit court for the violation of an offense for which he was not tried in district court." Jones v. City ofDaphne, 519 So.2d 587, 589 (Ala.Crim.App. 1986). Section 12-11-30, Ala. Code 1975, provides the circuit court not only with original jurisdiction to try a criminal case, but also with appellate jurisdiction to try de novo a criminal conviction appealed from the district court. See §12-11-30(3), Ala. Code 1975. Under the circumstances in the instant case, the defendant was "invok[ing] the circuit court's appellate jurisdiction, not its original jurisdiction." Blue Cross BlueShield of Alabama, Inc. v. Butler, 630 So.2d 413, 416 (Ala. 1993). Thus, the trial court erred in dismissing the appeal for a trial de novo for the reasons stated above.
However, the trial court's erroneous ruling in this regard may not necessarily entitle Hulsey to a reversal of his conviction for assault in the second degree (the lesser-included offense to attempted murder). The State disputed Hulsey's claim that count one of the indictment was based on the same conduct as formed the basis of the assault-in-the-third-degree conviction.[2] If count one was based on a separate incident from the conduct underlying the district-court conviction, there is no double-jeopardy violation. It is only if the offense of assault in the third degree and the offense of assault in the second degree are based on the same conduct that the prohibition against double jeopardy is violated. However, the circumstances surrounding Hulsey's conviction in the district *Page 1187 
court are unclear from the instant record. Therefore, because the trial court's ruling did not reach the merits of Hulsey's claim that he was being placed in jeopardy twice for the same conduct, we remand this case to the trial court for further proceedings on Hulsey's motion to dismiss the attempted murder charge. The trial court should hold a hearing on Hulsey's motion to dismiss in order to ascertain the basis of Hulsey's conviction in the district court for assault in the third degree and ultimately determine whether double-jeopardy principles have been violated, as Hulsey claims. At the conclusion of the hearing, the trial court should issue written findings of fact. If necessary, the trial court may vacate Hulsey's conviction for assault in the third degree. In any event, the trial court should make written findings for a return to this Court.
Based on the sparse record before the court concerning what transpired in the district court we have made the following assumptions. On remand the trial court is free to clarify any of these assumptions that are false. We note that Husley did not challenge the circuit court's dismissal of his appeal for a trial de novo and what appears to be a vacating of the district-court conviction. Of course, there would be no incentive for a defendant to challenge such a ruling. However, the proper procedure to challenge the circuit court's dismissal of a de novo appeal is pursuant to a petition for a writ of mandamus requesting that the circuit court be ordered to reinstate the appeal. See Ex parte Weeks,611 So.2d 259, 261 (Ala. 1992) ("After an unsuccessful attempt to get the circuit court to set aside its order dismissing his appeal, Weeks petitioned the Court of Criminal Appeals for a writ of mandamus requiring the circuit court to reinstate his appeal.") The status of the district-court conviction is not before this Court in the instant appeal. However, we can find no authority permitting the circuit court to vacate a district-court conviction based on the facts presented in the instant case. We find that, in any event, the circuit court exceeded its appellate jurisdiction when it granted the State's motion to dismiss Hulsey's appeal for a trial de novo and apparently rendered Hulsey's conviction in the district court void. We also note that the dismissal was granted without affording Hulsey an opportunity to be heard on the motion, a fact that in itself calls into question due-process concerns. See Weeks, 611 So.2d at 261-62. Thus, because the circuit court was without jurisdiction to void the district-court conviction, the district court should, if necessary, reinstate Hulsey's conviction for assault in the third degree and credit him with the appropriate amount of time served.[3]
 II.
Hulsey contends that the trial court committed reversible error by admitting — over his motion in limine and renewed objections at trial — evidence of Hulsey's *Page 1188 
prior threats against Ray; evidence indicating that a contempt order had been issued against Hulsey in the divorce case; and evidence indicating that a restraining order had been issued against Hulsey in the divorce case. The State sought to introduce evidence of these collateral acts under the motive and intent exceptions to the exclusionary rule regarding character evidence.[4] Hulsey argues that even if this evidence was admissible under Rule 404(b), Ala.R.Evid.,[5] its probative value was negligible and was substantially outweighed by its prejudicial impact. Hulsey also argues in his brief to this court at footnote 1, as he did at trial, that this collateral evidence was inadmissible because, he says, he was not given advance notice of the State's intent to offer this evidence as required by Rule 404(b), Ala.R.Evid. The trial court ruled that evidence of prior threats against Ray would be assessed individually when that evidence was offered at trial (R. 23). The trial court issued no ruling regarding the contempt order because the State asserted that it did not intend to refer to the contempt order in its case.[6] The trial court denied the motion in limine insofar as the restraining order was concerned. The trial court ruled that in this case, the State gave "reasonable notice" (R. 17) of its intent to offer this evidence, as required by Rule 404(b), Ala.R.Evid.[7]
 "A motion in limine is the proper method by which to prohibit the introduction of irrelevant evidence. Wiley v. State, 516 So.2d 812, 814 (Ala.Crim.App. 1986), rev'd on other grounds, 516 So.2d 816 (Ala. 1987). The decision to grant or deny such a motion rests within the sound discretion of the trial court and that decision will not be overturned on appeal absent an abuse of discretion. Id. The test for relevancy is whether the evidence `bears any logical relationship to the ultimate inference for which it is offered.' Aetna Life Ins. Co. v. Lavoie, 470 So.2d 1060, 1078 (Ala. 1984); see also C. Gamble, McElroy's Alabama Evidence § 21.01(1) (5th ed. 1996); Garner v. State, 606 So.2d 177 (Ala.Crim.App. 1992)."
Ex parte Jackson, 836 So.2d 979, 985 (Ala. 2002). Moreover, "`"`[t]he decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge.' Akin v. *Page 1189 State, 698 So.2d 228, 234 (Ala.Cr.App. 1996), cert. denied, 698 So.2d 238
(Ala. 1997), quoting Blanco v. State, 515 So.2d 115, 120 (Ala.Cr.App. 1987)."'" Centobie v. State, 861 So.2d 1111, 1126 (Ala.Crim.App. 2001) (quoting Perkins v. State, 808 So.2d 1041, 1083 (Ala.Crim.App. 1999), affirmed, 808 So.2d 1143 (Ala. 2001)).
At trial, Ray was allowed to give the following testimony pursuant to Rule 404(b), Ala.R.Evid., over defense objections. Ray was allowed to testify that Hulsey had "been physically abusive to [her] before." (R. 211.) Ray also testified that a scar over her eye was "caused" by Hulsey "[p]unching [her] eye." (R. 213-14.) Elizabeth Kost, a friend of Ray's, testified that she saw Hulsey a week before the incident. She was allowed to testify, over a defense objection, that Hulsey was mad at the time and stated that he "should just drive his truck through the house and kill them and get it over with." (R. 431.) Jack Duncan, Elizabeth Kost's 18-year-old son, was allowed to testify that some time in May 2000, he heard Hulsey state that "he ought to kill [Ray]." (R. 439.) We find no error with the trial court's rulings.
 "`Under the general exclusionary rule, evidence of collateral offenses of the accused is inadmissible to prove guilt on the now charged offense. Anonymous v. State, 507 So.2d 972, 973 (Ala. 1987). However, evidence of collateral offenses may be admissible under certain exceptions to the exclusionary rule or for "other purposes" than to prove the accused's guilt. These exceptions or other purposes include motive, intent, identity, or common plan, design, or scheme. Bowden v. State, 538 So.2d 1226, 1227 (Ala. 1988); Atkisson v. State, [640 So.2d 33] (Ala.Crim.App. 1993); Register v. State, [640 So.2d 3] (Ala.Crim.App. 1993).'
 "Williamson v. State, 629 So.2d 777, 780
(Ala.Crim.App. 1993)."
Baker v. State, [Ms. CR-95-0292, January 12, 2001] 819 So.2d 87, 89
(Ala.Crim.App. 2001).
In the present case, as in Baker, "evidence of the collateral offenses by the appellant was admissible pursuant to the motive and intent exceptions to the general exclusionary rule." Baker, 819 So.2d at 89.
 "`"Evidence which pertains to an accused's motive or intent to commit the presently-charge[d] offense is admissible as an exception to the general exclusionary rule applying to collateral acts or offenses. Nelson v. State, 511 So.2d 225, 236 (Ala.Cr.App. 1986), aff'd, 511 So.2d 248
(Ala. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); Dyess v. State, 418 So.2d 208 (Ala.Cr.App. 1982); Terry v. State, 397 So.2d 217 (Ala.Cr.App.), writ denied, Ex parte Terry, 397 So.2d 223 (Ala. 1981). See also C. Gamble, McElroy's Alabama Evidence, § 69.01(7) (3rd [ed.] 1977). `Moreover, if the accused's commission of another crime is admissible in a present prosecution, the State may prove in meticulous detail the manner in which the accused committed such other crime.' (Citations omitted). Nelson, supra, at 234."
 "`Coleman v. State, 552 So.2d 156, 158 (Ala.Cr.App. 1988). See also Karr v. State, 491 So.2d 1073, 1075
(Ala.Cr.App. 1986).'
 "Hunt v. State, 642 So.2d 999, 1041 (Ala.Cr.App. 1993), aff'd, 642 So.2d 1060 (Ala. 1994)."
Baker, 819 So.2d at 89.
As in Baker, the collateral offenses committed by Hulsey were "relevant in the present offense; they demonstrated *Page 1190 
a history of domestic abuse by the appellant against the victim and were therefore relevant in proving motive." Baker, 819 So.2d at 89. Moreover, in the present case, Hulsey alleged that he became upset with Ray because she was drunk when he arrived and that she initiated the physical altercation that transpired between them. Thus, the question of intent was an issue.
 "`Domestic abuse often has a history highly relevant to the truth-finding process. When an accused has a close relationship with the victim, prior aggression, threats or abusive treatment of the same victim by the same perpetrator are admissible when offered on relevant issues under [state law]. Their rationale for admissibility is that an accused's past conduct in a familial context tends to explain later interactions between the same persons. . . .
 "`Other courts have also held admissible prior abusive behavior against the same victim by the same defendant in a domestic relationship. See People v. Linkenauger, 32 Cal.App.4th 1603, 1612-13, 38 Cal.Rptr.2d 868, 873-74 (Cal.Ct.App. 1995) (under California's equivalent to Rule 404(b), evidence of prior domestic quarrels, jealousy, and threats admissible to show defendant's motive, intent, and state of mind); Lindsey v. State, 135 Ga. App. 122, 218 S.E.2d 30, 31 (1975) (prior attempts to commit same crime against same victim generally admissible); State v. Gibbons, 256 Kan. 951, 889 P.2d 772, 780 (1995) (evidence of earlier spousal abuse admissible to show motive or intent, the parties' relationship, the continuing course of conduct, and corroboration); State v. Elvin, 481 N.W.2d 571, 575 (Minn.Ct.App. 1992) (evidence of prior domestic violence admissible to show relationship between victim and defendant), review denied (1992); State v. Johnson, 73 Ohio Misc.2d 1, 657 N.E.2d 383, 384 (Ohio 1994) (defendant's earlier convictions for crimes of violence against same victim admissible in domestic violence threat case to prove element of crime charged and intent, motive, or absence of mistake or accident).'
 "State v. Laible, 594 N.W.2d 328, 335 (S.D. 1999) (citations omitted in first paragraph). See also State v. Grant, 83 Wash. App. 98, 920 P.2d 609 (1996) (defendant's history of domestic violence was relevant and, therefore, admissible in a case involving another alleged act of domestic violence toward the same victim because it was relevant and its probative value outweighed its prejudicial effect). State v. Andrich, 943 S.W.2d 841, 845 (Mo.App. 1997) (evidence of prior bad acts were admissible in a case involving the violation of an `adult-abuse' order as the evidence showed the defendant's intent to inflict injury on the victim, stating that `in adult abuse cases, a defendant's history of threatening and violent conduct involving the same victim can be especially probative'). In State v. Jacobs, 939 S.W.2d 7
(Mo.App. 1997), a defendant was charged with kidnapping the woman with whom he had had a five-year relationship and their child. At trial, the State introduced photographs showing prior abuse by the defendant against the victim, as well as the testimony of the victim concerning prior acts of domestic abuse by the defendant, including an incident in which he had fractured her rib, as well as one in which he had beaten the victim with his fists, a broomstick, and a television stand, and had choked her with the television cable. The Missouri Court of Appeals held that the trial court properly allowed the evidence of abuse because the evidence was logically and legally relevant — it tended to establish the appellant's *Page 1191 
guilt of the charged offense and showed his animosity toward the victim, showed his intent, and showed his motive to injure her.
 "`The evidence of prior domestic abuse tended to establish his intent and motive to commit the crimes charged. See State v. Dooley, 851 S.W.2d 683, 688
(Mo.App. 1993) (where evidence of violence in [a] relationship with [the] victim tended to establish [the] defendant's motive to commit [the] crimes of kidnapping and assault). The probative value of this evidence outweighed its prejudicial effect.'
 "Id., 939 S.W.2d at 10. See also People v. Hines, 690 N.Y.S.2d 66, 260 A.D.2d 646 (1999) (victim was properly allowed to testify to prior domestic incidents with the defendant in a case involving reckless endangerment and criminal mischief for the burning of her clothes and the building in which she lived, in that the prior bad acts established the defendant's motive; any prejudice in the admission of this evidence was outweighed by its probative value)."
Baker, 819 So.2d at 89.
As in Baker, we conclude that
 "the trial court did not abuse its discretion in determining that the evidence concerning the prior bad acts of domestic abuse by the appellant against the victim were admissible; they tended to prove the appellant's motive and intent, both of which were at issue, and the probative value outweighed any prejudicial effect caused by the admission of such evidence."
Baker, 819 So.2d at 89.
Likewise, we find no abuse of discretion regarding the admission of evidence of the restraining order over the defense's objection. Before the State offered evidence of the restraining order, Ray had testified that she had been given "exclusive possession of the home" by court order pending her divorce from Hulsey (R. 140) and that a restraining order prohibited Hulsey from being "around [her] at that time." (R. 143.) Hulsey objected, stating that any reference to the restraining order was irrelevant. The trial court ruled that, "an element of burglary is that the entry was unlawful and that [evidence of a restraining order] . . . would prove — would be probative on an element of the offense." (R. 144.) Thus, the restraining order was properly admitted to show that Hulsey did not have permission to be at Ray's home.
"`It is well settled that "a determination of admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of discretion."'State v. Mason, 675 So.2d 1, 3 (Ala.Cr.App. 1993), quoting Jennings v.State, 513 So.2d 91, 95 (Ala.Cr.App. 1987)." Ballard v. State,767 So.2d 1123, 1130 (Ala.Crim.App. 1999). We find no error in the trial court's ruling. In order to obtain a conviction for burglary in the first degree, the State must prove that a person "knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein." § 13A-7-5(a), Ala. Code 1975. Thus, we cannot find that the admission of evidence showing the unlawfulness of Hulsey's presence at the home occupied by Ray was error. "Matters resting in the sound discretion of the trial court will not be disturbed, absent a clear abuse of discretion." Pilley v. State, 789 So.2d 870, 882 (Ala.Crim.App. 1998), citing Pace v. State, 284 Ala. 585, 226 So.2d 645 (Ala. 1969).
We find no merit to Hulsey's claim that he was denied proper notice pursuant to Rule 404(b), Ala.R.Evid. Under *Page 1192 
the circumstances of this case defense counsel was given reasonable notice of the State's intent to offer evidence of Hulsey's prior offenses against Ray. Additionally, because the trial court assessed each offer of evidence as it was presented and heard Hulsey's objections to each offer by the State, the trial court assured that Hulsey did not suffer undue prejudice. Therefore, this argument is without merit.
 III.
Hulsey contends that the trial court erred in failing to grant his request for a mistrial. Hulsey claims that he was entitled to a mistrial because during a recess in the trial, one juror overheard a portion of a discussion between the attorneys for both sides regarding a possible plea agreement in the case. "A trial court's ruling on a motion for a mistrial will be reversed only upon `a clear showing of abuse of discretion.' Exparte Jefferson, 473 So.2d 1110, 1114 (Ala. 1985)." Ex parte Lawrence,776 So.2d 50, 56 (Ala. 2000). The following transpired at trial.
 "MR. STORIE [defense attorney]: Judge, at this time, the defense would make a motion for a mistrial.
 "Dave [Peacock, a prosecutor,] and Jill [Beck, a prosecutor,] and I just went across the hall to talk about settlement of the case and we couldn't reach a settlement. As we were coming back out, the jurors are standing around out there in the hall. Ms. Beck said, `So it's 20 with a 5-year split, right?' And — And it was within the hearing of the jurors and —
 "THE COURT: Well, we will have to bring the jury in to see if anybody heard first before we rule on the mistrial.
"MR. PEACOCK [a prosecutor]: Yes, sir.
"THE COURT: Let's bring the jury in.
 "MR. STORIE: Wait. Wait. How are we going to couch that language?
 "THE COURT: I am just going to ask them that [(sic)] the attorneys were talking in the hall and Ms. Beck made a statement. Did anybody hear the statement? And if they raise their hand, we will send the rest of the jurors out and find out what they heard.
". . . .
 "MR. PEACOCK: If you don't mind phrasing it that she made the statement to . . . Mr. Storie?
"THE COURT: Okay."
(R. 123-24.)
 "THE COURT: Ladies and gentlemen, if I could have your attention for a minute?
 "It's been brought to my attention that a few minutes ago the attorneys were standing out in the hall and they were talking and M[s]. Beck made a statement to Mr. Storie.
 "Could I see a show of hands of the jurors that heard what Ms. Beck said to Mr. Storie?
"(One juror raised his hand.)
"THE COURT: Oh, Mr. [B]?
"JUROR [B]: Yes, sir.
 "THE COURT: All right. Have you discussed with any of the other jurors what you heard?
"JUROR [B]: No, sir.
 "THE COURT: All right. I would like to ask all of the jurors except Mr. [B] to step out into the hall and I need to question him just a minute.
 "(Pause. Whereupon, all of the jurors exited the courtroom except Juror [B].)
"THE COURT: You can sit down, Mr. [B], if you want to.
"(Juror [B] complied.) *Page 1193 
"THE COURT: Mr. [B], what did you hear Ms. Beck say?
 "JUROR [B]: I didn't hear a complete sentence. All I heard was 20 years.
 "THE COURT: What — In your mind, what did you take that to mean?
 "JUROR [B]: I was trying not to listen, Judge. I just heard 20 years. I — I was reading in my book.
 "THE COURT: All right. And you didn't form an opinion as to what she meant by that statement?
"JUROR [B]: No, sir.
 "THE COURT: Okay. Would you be able to put that statement out of your mind and give both the State of Alabama and the defendant a fair trial?
"JUROR [B]: Yes, sir.
 "THE COURT: Okay. And I will instruct you not to — please, do not mention that to any of the rest of the jurors —
"JUROR [B]: Yes, sir.
 "THE COURT: — till after the trial, then you can tell them because I am sure they will be curious.
 "Thank you, Mr. [B]. Let me get you to step out just a minute.
"JUROR [B]: Yes, sir.
 "(Pause. Whereupon, Juror [B] exited the courtroom. No jurors present.)
 "THE COURT: Did you want to make any further argument, Mr. Storie?
 "MR. STORIE: Yes, Your Honor. I mean, he heard 20 years. This is a criminal case. It's clear that we were talking about an offer, we were talking about a possible sentence.
"THE COURT: Well, of course, it's clear to you.
 "MR. STORIE: Well, I think that it's clear to a reasonable person to assume that's what was being said. And, you know, jurors, I think, are going to be reluctant to disclose that. I mean, they want to put things out of their head but I don't think that he can do that.
"THE COURT: Well, I can —
 "MR. STORIE: It's tainted the process from here forward.
 "THE COURT: Well, I think, so far as the motion for a mistrial, I can — safely, I can deny that. What relief I can give you, though, I can — we have got two alternates. I can strike Mr. [B] from the jury because he is the only one that heard it and we have still got an alternate.
 "MR. STORIE: I would have to — I need a very short recess —
"THE COURT: Sure.
"MR. STORIE: — so I can look over my stuff and see if —
"THE COURT: All right. Go ahead.
"(Recess.)
 "MR. STORIE: We will stand on our motion for a mistrial.
"THE COURT: Okay. I will overrule the motion."
(R. 129-33.)
Hulsey argues on appeal, as at trial, that he was entitled to a mistrial because in a criminal trial, the phrase "20 years," would clearly be taken to be a reference to a possible prison sentence and therefore is clearly prejudicial. He asserts on appeal that "the trial judge has a duty to conduct a `reasonable investigation of irregularities claimed to have been committed' before he concludes that the rights of the accused have not been compromised." (Hulsey's brief at p. 24, quotingPhillips v. State, 462 So.2d 981, 990 (Ala.Crim.App. 1984)). According to Hulsey, "the trial court conducted only a cursory examination of the juror, whereupon he allowed the juror to continue." (Hulsey's brief at p. 24.) *Page 1194 
There is no merit to this argument. The trial court ascertained exactly what transpired and then ascertained from juror B that his overhearing the phrase "20 years" had not caused him to form any opinions about the case. Thus, the trial court assured that Hulsey's rights had not been compromised.
Moreover, any error would be an invited error. "`A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or that were a natural consequence of his own action.' Taylor v. State,808 So.2d 1148, 1202 (Ala.Crim.App. 2000) (internal citation omitted [inTaylor]), aff'd, 808 So.2d 1215 (Ala. 2001)." McCall v. State,833 So.2d 673, 675 (Ala.Crim.App. 2001). In the present case, Hulsey declined the trial court's offer to remove juror B and replace him with an alternate juror. He cannot now claim that juror B's participation as a juror was reversible error.
For the reasons set forth above, Husley's convictions for burglary in the first degree, attempt to commit arson in the first degree, and criminal mischief in the first degree are affirmed. However, pursuant to this Court's directions in Part I of this opinion, this cause is remanded for further proceedings as to Hulsey's conviction for assault in the second degree. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 63 days after the release of this opinion. The return to remand should include a transcript of the remand proceedings and a copy of the trial court's specific, written findings of fact, if any.
AFFIRMED IN PART AND REMANDED.*
McMILLAN, P.J., and SHAW and WISE, JJ., concur; BASCHAB, J., concurs in the result, with opinion.
* Note from the reporter of decisions: One June 20, 2003, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On July 18, 2003, that court denied rehearing without opinion.
[1] Hulsey's motion to dismiss actually asserted that all the charges contained in the indictment should be dismissed. However, at the hearing on the motion, Hulsey argued only that the count charging attempted murder as to Ray should be dismissed.
[2] The verdict form reads: "We the jury find the defendant Olin Dale Hulsey guilty of Assault II as a lesser included offense of Count I of the indictment." (C. 97.) Evidence indicating that Hulsey attempted to start a fire in Ray's home and that he inflicted various blows upon Ray was introduced at trial. Thus, the exact conduct underlying the verdict is unclear.
[3] However, we note that because Hulsey failed to challenge the dismissal of his de novo appeal, and the time to pursue such a challenge has passed, he can obtain no appellate relief in the circuit court regarding the district-court conviction. See Rule 30.5, Ala.R.Crim.P. (The circuit court has 30 days from the order of dismissal to set the order of dismissal aside and reinstate the appeal.); Rule 21(a), Ala.R.App.P. ("The petition [for the writ of mandamus] shall be filed within a reasonable time. The presumptively reasonable time for filing a petition seeking review of an order of a trial court shall be the same as the time for taking an appeal. If a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time.").
[4] "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Rule 404(a), Ala.R.Evid.
[5] Rule 404(b), Ala.R.Evid. states:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
[6] The State left open the possibility of using the contempt order to impeach Hulsey if the opportunity arose.
[7] Hulsey asserted that he had not received notice of the State's intent to offer this evidence until the Friday afternoon before trial began on Monday. The State responded that it was not sure what day of the previous week the notice had been filed — although the notice is included in the record and reflects that it was filed in the circuit clerk's office before trial began on Friday, September 21, 2001. However, the prosecutor represented to the trial court that he became involved in the case the previous week and that notice was filed when the information was obtained.