Rel: January 17, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0532

_____

**Ex parte Christopher Sandon Ramirez**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CRIMINAL APPEALS**

**(In re: Christopher Sandon Ramirez**

**v.**

**State of Alabama)**

**(Montgomery Circuit Court: CC-20-35;
Court of Criminal Appeals: CR-2023-0282)**

MENDHEIM, Justice.

Christopher Sandon Ramirez petitioned this Court for a writ of certiorari to review the Court of Criminal Appeals' decision in Ramirez v. State, [Ms. CR-2023-0282, June 28, 2024] __ So. 3d __ (Ala. Crim. App. 2024), affirming Ramirez's convictions in the Montgomery Circuit Court ("the circuit court") for driving while under the influence of a controlled substance ("DUI"), see § 32-5A-191(a)(3), Ala. Code 1975, and possession of drug paraphernalia, see § 13A-12-260, Ala. Code 1975, and affirming his resulting sentences of one year of incarceration in the Montgomery County jail for his DUI conviction and six months of incarceration in the Montgomery County jail for his possession-of-drug-paraphernalia conviction, which were suspended while Ramirez was placed on supervised probation for two years. We granted certiorari review to consider whether the Court of Criminal Appeals' decision raises a material question of first impression requiring a decision by this Court, which is discussed below, and to consider whether the Court of Criminal Appeals' decision is in conflict with Ex parte Sorsby, 12 So. 3d 139 (Ala. 2007), and Clark v. City of Mobile, 357 So. 2d 675 (Ala. Crim. App. 1978). We conclude that the Court of Criminal Appeals' decision does raise a

material question of first impression requiring a decision by this Court and that the Court of Criminal Appeals' decision is in conflict with <u>Ex parte Sorsby</u> and <u>Clark</u>.

<u>Facts and Procedural History</u>

As will be explained below, this case eventually proceeded to a jury trial in the circuit court, at which Corporal Nina Knapp, an employee of the Montgomery County Sheriff's Office, testified. According to Corporal Knapp's testimony, on June 9, 2019, she was on duty and patrolling in Montgomery County. At approximately 2:00 a.m. on that day, Corporal Knapp observed Ramirez driving a gold-colored sport-utility vehicle with a trailer attached to it; the trailer did not have a license plate. As a result, Corporal Knapp initiated a traffic stop and had Ramirez pull over to the side of the road. Corporal Knapp approached Ramirez's vehicle and observed that Ramirez, while still sitting in the driver's seat of his vehicle, "was perspiring far more than any man should have ever been perspiring at the time." Corporal Knapp also observed that Ramirez's pupils were dilated and that "[t]here wasn't really a pupillary response with a flashlight …."

Based on Corporal Knapp's observations of Ramirez, she testified, she "wanted to continue [her] investigation and have Mr. Ramirez step out [of his vehicle] to further [her] DUI investigation." Ramirez complied with Corporal Knapp's request, and Corporal Knapp administered "standardized field sobriety tests" to Ramirez. Corporal Knapp testified that Ramirez's performance of the field sobriety tests indicated that he was impaired, and Corporal Knapp suspected that he had been driving while under the influence. Based on indications that Ramirez was impaired, Corporal Knapp testified, she "administered a portable breath test to Mr. Ramirez at the scene." The "breath test," which only tests for the presence of alcohol on the breath being tested, did not indicate the presence of alcohol on Ramirez's breath.

Following Corporal Knapp's investigation of Ramirez, she placed him under arrest for DUI. Corporal Knapp testified that she then conducted an "inventory search" of Ramirez's vehicle, during which she "found a pipe commonly used to ingest narcotics" on "the driver's side floorboard next to the gas pedal …." Corporal Knapp then asked Ramirez if he would "submit to a drug-recognition evaluation," which Ramirez refused. Corporal Knapp also asked Ramirez if "he would be willing to

4

submit a blood sample in order to have it analyzed by the Department of Forensic Sciences to see what was in his system," which Ramirez also refused.

After Ramirez refused to submit to any further searches, Corporal Knapp contacted the Montgomery District Court ("the district court") and obtained a search warrant to obtain a sample of Ramirez's blood for testing. With the warrant issued, Corporal Knapp transported Ramirez to Jackson Hospital in Montgomery, where a sample of his blood was drawn. Corporal Knapp then sent Ramirez's blood sample to the Alabama Department of Forensic Sciences ("DFS") for testing. The DFS toxicological-analysis report, which is a certificate of analysis under § 12-21-300(b), Ala. Code 1975 (the DFS toxicological-analysis report will hereinafter be referred to as "the DFS certificate of analysis"), indicated that methamphetamine and amphetamines were present in Ramirez's blood sample.

Based on the above-summarized evidence, Ramirez was charged with one count of possession of drug paraphernalia, in violation of § 13A-12-260, and one count of DUI, in violation of § 32-5A-191(a)(3). Ramirez's case was set for a trial before the district court to occur on October 31,

5

2019; that scheduled trial was subsequently reset to occur on January 9, 2020. Section 12-21-300(a), Ala. Code 1975, states, in pertinent part, that, "[i]n any criminal case, … the prosecuting authority may offer a certificate of analysis …, in lieu of direct testimony." However, in order to do so, § 12-21-301, Ala. Code 1975, requires that "[t]he party seeking to introduce a certificate of analysis shall not less than 40 days prior to the commencement of the … trial, give written notice to all parties of intent to offer proof by a certificate of analysis." Accordingly, on August 21, 2019, pursuant to § 12-21-301, the State served Ramirez notice of its intent to rely upon the DFS certificate of analysis, in lieu of direct testimony.

On January 9, 2020, Ramirez appeared before the district court and entered a guilty plea to both charges against him. The district court sentenced Ramirez to six months of imprisonment for his possession-of-drug-paraphernalia conviction and to one year of imprisonment for his DUI conviction. On January 23, 2020, Ramirez appealed both convictions and sentences to the circuit court for a trial de novo.

On February 2, 2020, the circuit court set Ramirez's case for a jury trial to occur at a future, to-be-determined date and ordered the parties

6

to engage in discovery. On March 1, 2021, the circuit court entered an order appointing Ramirez an attorney. On July 6, 2021, the State filed a notice of appearance in the circuit-court proceeding. The case was ultimately set for trial on March 13, 2023.

Before the trial de novo in the circuit court, the State did not serve Ramirez with a notice under § 12-21-301 indicating that, at trial, it intended to rely upon the DFS certificate of analysis, in lieu of direct testimony. The trial in the circuit court commenced on March 13, 2023. During the trial, the State presented the DFS certificate of analysis, in lieu of direct testimony, as evidence indicating that, at the time when Ramirez was stopped by Corporal Knapp on June 9, 2019, methamphetamine and amphetamines were present in Ramirez's blood; the State did not call as a witness the person working for DFS who conducted the analysis of Ramirez's blood. Ramirez objected to the admission of the DFS certificate of analysis, arguing that the State had not provided Ramirez with the required notice under § 12-21-301 indicating that the State intended to rely upon the DFS certificate of analysis, in lieu of direct testimony. Ramirez acknowledged that the State had provided such notice pertaining to the trial that had been

7

scheduled to occur in the district court, but he argued that that was not sufficient notice pertaining to the trial de novo in the circuit court. As a result of the State's failure to provide the proper notice, Ramirez argued, the admission of the DFS certificate of analysis, without the testimony of the person who had performed the analysis, violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. The circuit court overruled Ramirez's objection, holding that the notice that the State had given Ramirez in the district court was sufficient for the trial de novo in the circuit court, and it admitted the DFS certificate of analysis into evidence.

After both sides rested, the case was submitted to the jury, which found Ramirez guilty as to both counts against him. The circuit court sentenced Ramirez to six months of incarceration for his possession-of-drug-paraphernalia conviction and to one year of incarceration for his DUI conviction. Ramirez appealed to the Court of Criminal Appeals.

Before the Court of Criminal Appeals, Ramirez argued, among other things, that the circuit court had erred by admitting into evidence the DFS certificate of analysis. In support of that argument, Ramirez argued that the admission of the DFS certificate of analysis, without the

testimony of the person who had performed the analysis, violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Court of Criminal Appeals concluded, however, that that argument had not been properly preserved for appellate review. The Court of Criminal Appeals stated:

"Section 12-21-300, Ala. Code 1975, states:

"'(a) In any criminal case, or juvenile or family court case which is of a criminal nature, the prosecuting authority may offer a certificate of analysis as described below, in lieu of direct testimony. The court shall receive as evidence the certificate of analysis from any of the following:

"'(1) A person performing an analysis or examination in any laboratory operated by the Alabama Department of Forensic Sciences or authorized by the department to conduct an analysis or examination of the type performed.

"'(2) A person performing an analysis or examination in any criminalistics laboratory established pursuant to federal law.

"'(b) To be admissible pursuant to this section, a certificate of analysis shall contain all of the following:

"'(1) The date and time the evidence was delivered to the facility.

9

"'(2) The name of the person making the delivery, and the name of the person receiving the delivery.

"'(3) A brief description of the evidence.

"'(4) The type of examination or analysis requested.

"'(5) The name of the person making the examination or analysis.

"'(6) The date or dates of the examination or analysis.

"'(7) The results of the examination or analysis.

"'The certificate of analysis shall give the name and address of the facility in which the examination or analysis was made, and it shall be signed by and sworn to as true and correct, under penalty of law, by the person making the examination or analysis.'

"Section 12-21-301, Ala. Code 1975, states:

"'The party seeking to introduce a certificate of analysis shall not less than 40 days prior to the commencement of the hearing or trial, give written notice to all parties of intent to offer proof by a certificate of analysis.  The notice shall include a copy of the certificate of analysis.'

"Section 12-21-302(a), Ala. Code 1975, states:

"'The party against whom the certificate is offered may request, not later than 30 days prior to the commencement of the hearing or trial, a hearing to show cause why a subpoena should be issued for cross-examination of the person who performed the examination or analysis.'

"In <u>Brown v. State</u>, 939 So. 2d 957 (Ala. Crim. App. 2005), Mark Lynn Brown raised the same argument that Ramirez has raised, i.e., that the circuit court erred by 'admitting into evidence a certificate of analysis from the [DFS] regarding the nature of the substances found in his house, because, [Brown] sa[id], admission of the certificate violated his right to confrontation.' <u>Id.</u> at 958. Brown had received notice of the State's intent to introduce the certificate of analysis more than five months before his trial began, but

"'he did not file a written request 30 days before trial for a hearing to show cause why a subpoena should be issued for the forensic scientist. Instead, Brown waited until after the trial had begun … and then objected to the certificate of analysis on the ground that its admission would violate his right to confrontation.'

"<u>Id.</u> at 960. Thus, this Court refused to address Brown's Confrontation Clause claim, stating that,

"'[b]ecause Brown did not comply with § 12-21-302 by challenging the certificate of analysis at least 30 days before trial, his objection to the certificate after the trial began was untimely; therefore, the issue of the admissibility of the certificate of analysis is not properly before this Court for review.'

"<u>Brown</u>, 939 So. 2d at 961.

11

"In this case, the State filed in the district court notice of its intent to introduce the DFS [certificate of analysis] 'in lieu of direct testimony.' (C. 54.) That notice was filed in August 2019, more than three years before Ramirez's March 2023 trial in the circuit court. However, there is no indication in the record that Ramirez ever requested 'a hearing to show cause why a subpoena should be issued for cross-examination of the person who performed the examination or analysis,' § 12-21-302(a), much less that he did so at least 30 days before his trial began. Instead, Ramirez waited until the State proffered the DFS [certificate of analysis] at trial to raise his Confrontation Clause claim. Thus, as this Court did under the same circumstances in Brown, we hold that 'the issue of the admissibility of the [DFS certificate of analysis] is not properly before this Court for review.' Brown, 939 So. 2d at 961.

"We acknowledge Ramirez's argument that the State's notice in the district court was not sufficient to comply with the 40-day notice required by § 12-21-301. According to Ramirez, 'once [he] filed his notice of appeal for a trial de novo, … the slate was to be wiped clean.' (Ramirez's brief, p. 30.) Thus, Ramirez argues, '[i]f the slate is wiped clean, no filing in the district court should determine the procedure in the circuit court.' (Id., pp. 31-32.) In other words, Ramirez argues that, once he appealed to the circuit court for a trial de novo, the State was required to refile the notice of its intent to introduce the DFS [certificate of analysis] in lieu of direct testimony. And, because the State did not refile that notice, Ramirez argues that he had no duty to comply with § 12-21-302 and that he 'believed that the State would call the witness' who performed the analysis of his blood sample. (Ramirez's brief, p. 34.)

"We are not persuaded by Ramirez's argument. First, Ramirez has not cited any authority that required the State to refile its notice in the circuit court. Regardless, although it is true that a trial de novo 'provides a defendant with a clean

slate with regard to a determination of whether he or she is guilty of the offense charged,' Woods v. State, 261 So. 3d 491, 494 (Ala. 2016), 'an appeal for a trial de novo does not mean that the slate is thrown away.' Woodruff v. State, 347 So. 3d 281, 287 (Ala. Crim. App. 2020) (emphasis and citation omitted). As noted, before Ramirez pleaded guilty in the district court, the State provided him with notice of its intent to introduce the DFS [certificate of analysis] in lieu of direct testimony, and that [certificate of analysis] was clearly important evidence for the State, as it confirmed Cpl. Knapp's suspicion that Ramirez was under the influence of a controlled substance at the time of the traffic stop. Indeed, Ramirez concedes that the DFS [certificate of analysis] 'provided a necessary element the State had the burden to prove.' (Ramirez's reply brief, p. 18.) Thus, Ramirez should have certainly anticipated, once he received the State's notice, that the State would seek to introduce the DFS [certificate of analysis] into evidence if his case ever went to trial, whether that trial occurred in the district court, the circuit court, or both.

"The purpose of § 12-21-301 is to provide a party with advance notice that the opposing party intends to introduce a certificate of analysis in lieu of direct testimony from the person who performed the analysis. The State provided Ramirez with such notice in the district court, and, having received that notice, there was no logical reason for Ramirez to believe that the State would not rely on the DFS [certificate of analysis] in his trial de novo in the circuit court. Thus, we conclude that the State satisfied the 40-day notice required by § 12-21-301, which triggered Ramirez's obligation to comply with § 12-21-302(a). Because Ramirez failed to comply with that obligation, we adhere to our conclusion that he failed to preserve this claim for appellate review. Brown, supra."

Ramirez v. State, __ So. 3d at __ (footnote omitted).

Discussion

13

As set forth extensively above, the Court of Criminal Appeals determined that Ramirez's argument that the State had failed to give him proper notice in the circuit court under § 12-21-301 was not preserved for appellate review and, thus, cannot serve as a basis for reversing his convictions and corresponding sentences. The Court of Criminal Appeals determined that, even though the State had not given Ramirez notice that it intended to rely upon the DFS certificate of analysis, in lieu of direct testimony, at the trial de novo in the circuit court, Ramirez was required, under § 12-21-302(a), to object to the State's relying upon the DFS certificate of analysis during the trial in the circuit court "not later than 30 days prior to the commencement of the … trial …." Having failed to do so, the Court of Criminal Appeals concluded, Ramirez waived his right to raise on appeal any argument pertaining to § 12-21-301. Of course, Ramirez was required to raise an objection under § 12-21-302(a) in the circuit court only if he had received notice from the State under § 12-21-301 indicating that it intended to rely upon the DFS certificate of analysis, in lieu of direct testimony, at the trial de novo in the circuit court. The Court of Criminal Appeals' conclusion that Ramirez failed to object to the State's reliance upon the DFS certificate of analysis

14

rests on its determination that the State's notice to Ramirez in the district court under § 12-21-301 that it intended to rely upon the DFS certificate of analysis, in lieu of direct testimony, at the scheduled trial in the district court was sufficient to give Ramirez notice under § 12-21-301 that the State intended to rely upon the DFS certificate of analysis, in lieu of direct testimony, at the trial de novo in the circuit court.

The dispositive issue of first impression raised in this case, then, is whether the notice that the State gave to Ramirez in the district court under § 12-21-301 that it intended to rely upon the DFS certificate of analysis, in lieu of direct testimony, at the scheduled trial in the district court was sufficient notice under § 12-21-301 of the State's intention to rely upon the DFS certificate of analysis, in lieu of direct testimony, at the trial de novo in the circuit court. For the reasons set forth below, we answer that question in the negative. The Court of Criminal Appeals erred in concluding that the § 12-21-301 notice provided to Ramirez pertaining to the scheduled trial in the district court was sufficient to give him notice of the State's intentions pertaining to the trial de novo in the circuit court. Since he did not receive proper notice under § 12-21-301 in the circuit court, Ramirez was not required to object under § 12-21-

15

302(a) to preserve his argument regarding the admissibility of the DFS certificate of analysis for appellate review. Ramirez is also correct in arguing that the Court of Criminal Appeals' decision is in conflict with Ex parte Sorsby and Clark.

The Court of Criminal Appeals, in concluding that the notice that the State filed in the district court satisfied the requirement of § 12-21-301 for the trial de novo in the circuit court, relied exclusively upon Brown v. State, 939 So. 2d 957 (Ala. Crim. App. 2005). Brown, however, is distinguishable from the present case. As explained by the Court of Criminal Appeals in its opinion, Brown did not involve the appeal of a criminal defendant's conviction in a district court to a circuit court for a trial de novo. Instead, the case originated in a circuit court, was tried before a jury, and, following the conviction and sentencing, was appealed to the Court of Criminal Appeals. There were not separate proceedings before a district court and a circuit court in Brown. In the present case, the question is whether the State's filing of its notice under § 12-21-301 in the district court -- indicating that it intended to introduce the DFS certificate of analysis, in lieu of direct testimony, in the scheduled trial in the district court -- was sufficient to provide Ramirez with notice of its

16

intent to introduce the DFS certificate of analysis, in lieu of direct testimony, in the trial de novo in the circuit court. <u>Brown</u> stands for the obvious proposition that the State must comply with § 12-21-301, but it offers no real guidance on the procedural question raised in this case.

Before the Court of Criminal Appeals, Ramirez argued that the State's notice in the district court was not sufficient to comply with the 40-day notice required by § 12-21-301 as the trial de novo in the circuit court. The Court of Criminal Appeals did not find Ramirez's argument convincing. The Court of Criminal Appeals acknowledged that "a trial de novo 'provides a defendant with a clean slate with regard to a determination of whether he or she is guilty of the offense charged,' <u>Woods v. State</u>, 261 So. 3d 491, 494 (Ala. 2016)," but also stated that "'an appeal for a trial de novo does not mean that the slate is thrown away.' <u>Woodruff v. State</u>, 347 So. 3d 281, 287 (Ala. Crim. App. 2020) (emphasis and citation omitted)." <u>Ramirez</u>, __ So. 3d at __.  Based on that partial sentence from <u>Woodruff v. State</u>, 347 So. 3d 281 (Ala. Crim. App. 2020) -- that "'an appeal for a trial de novo does not mean that the slate is thrown away'" -- the Court of Criminal Appeals discounted the entirety of Ramirez's argument.

A closer look at the partial sentence from <u>Woodruff</u> relied upon by the Court of Criminal Appeals is merited. In <u>Woodruff</u>, the issue addressed by the Court of Criminal Appeals was "whether the definition of 'conviction' in § 15-20A-4(4), Ala. Code 1975, part of the Alabama Sex Offender Registration and Community Notification Act ('the ASORCNA'), includes a municipal-court conviction appealed to a circuit court for a trial de novo." 347 So. 3d at 283. The appellant in that case argued, among other things, that "the definition of 'conviction' in § 15-20A-4(4) does not include his municipal-court conviction because he had appealed that conviction to the circuit court for a trial de novo …." <u>Id.</u> In answering that question, the Court of Criminal Appeals discussed the effect an appeal of a municipal court's judgment of conviction for a trial de novo in the circuit court has on the municipal court's judgment during the course of the appeal. The Court of Criminal Appeals generally recognized that the plain language of § 15-20A-4(4), Ala. Code 1975, which states, in pertinent part, that "[c]ases on appeal are deemed convictions until reversed or overturned," meant that the appellant's appeal of his municipal-court conviction did not make the conviction obsolete. The appellant, however, argued that the appeal of a municipal-

court conviction to a circuit court for a trial de novo is a different kind of appeal that essentially does away with the municipal-court conviction. The Court of Criminal Appeals disagreed.

The Court of Criminal Appeals relied extensively on Hulsey v. State, 866 So. 2d 1180 (Ala. Crim. App. 2003), in discussing "what happens to a municipal court's judgment of conviction when a defendant appeals to the circuit court for a trial de novo." Woodruff, 347 So. 3d at 286. The Court of Criminal Appeals stated:

"In Hulsey v. State, 866 So. 2d 1180 (Ala. Crim. App. 2003), this Court examined the circumstances under which the circuit court could dismiss a defendant's appeal for a trial de novo. This Court explained that an appeal for a trial de novo does not vacate the judgment of the municipal court for all purposes:

"'The trial court erred in granting the State's motion to dismiss Hulsey's appeal to the circuit court for a trial de novo. "Except as provided in Section 12-12-72[, Ala. Code 1975,] and in subsection (e) of Section 12-15-120, [Ala. Code 1975,] all appeals from final judgments of the district court shall be to the circuit court for trial de novo." § 12-12-71, Ala. Code 1975. The statute and rule governing an appeal from a municipal or district court for a trial de novo provide for dismissal of the appeal only upon the appellant's request or upon the appellant's failure to appear for trial. See Rule 30.5(b), Ala. R. Crim. P., and § 12-14-70(e) and (g), Ala. Code 1975. We can find no authority permitting the dismissal of a de novo

19

appeal on motion of the State other than for failure of the appellant to appear at trial. "'"The plain wording of both § 12-14-70[(e) and (g), Ala. Code 1975,] and Rule 30.5(b)[, Ala. R. Crim. P.,] supports the appellant's contention that the circuit court has authority to dismiss a de novo appeal only when the defendant fails to appear for trial."'" Mayes v. State, 710 So. 2d 537, 538 (Ala. Crim. App. 1997) (failure to appear at "plea day") (emphasis omitted) (quoting McLemore v. State, 686 So. 2d 492, 493 (Ala. Crim. App. 1996), quoting in turn Riddle v. State, 641 So. 2d 1316, 1318 (Ala. Crim. App. 1994)).

"'Moreover, upon proper dismissal of the appeal to the circuit court, the cause is to be remanded to the lower court "for enforcement of the lower court judgment." Rule 30.5(b), Ala. R. Crim. P.; see § 12-12-70(e) and (g), Ala. Code 1975; Gormandy v. City of Mobile, 830 So. 2d 52 (Ala. Crim. App. 2001) (Rule 30.5, Ala. R. Crim. P., must be understood to be mandatory and not permissive); Ex parte Hilburn, 591 So. 2d 8, 12 (Ala. 1991) (de novo appeal to the circuit court was dismissed for failure to appear and the cause remanded to the municipal court).

"'Additionally, until the trial de novo begins in the circuit court an appellant retains the right to submit to the lower court's ruling.

"'"[A] defendant, in an appeal from a conviction in the municipal court or district court for a trial de novo in the circuit court, has the right, prior to the empaneling of a jury or to the production of evidence in the circuit court, to submit to the judgment of the

20

> municipal court through the dismissal of his appeal and the reinstatement of the original judgment."
>
> "'<u>Ex parte Hilburn</u>, 591 So. 2d at 12.
>
> > "'Thus, although "'[a] trial <u>de novo</u> means that the slate is wiped clean and a trial in the Circuit Court is had without any consideration being given to prior proceedings in another court,'" <u>Ex parte Dison</u>, 469 So. 2d 662, 665 (Ala. 1984) (quoting <u>Yarbrough v. City of Birmingham</u>, 353 So. 2d 75, 78 (Ala. Crim. App. 1977)), [overruled on other grounds, <u>City of Dothan v. Holloway</u>, 501 So. 2d 1136 (Ala. 1986),] <u>an appeal for a trial de novo does not mean that the slate is thrown away</u>.'
>
> "<u>Hulsey v. State</u>, 866 So. 2d 1180, 1185-86 (Ala. Crim. App. 2003) (emphasis added). <u>See also</u> <u>Ex parte Hilburn</u>, 591 So. 2d 8, 10-12 (Ala. 1991) (discussing the legislative history of § 12-14-70, Ala. Code 1975, and the effect of a circuit court's dismissal of an appeal from a municipal-court judgment)."

<u>Woodruff</u>, 347 So. 3d at 287-88.

As is evident from the above-quoted portion of <u>Woodruff</u>, the idea that "an appeal from a trial de novo does not mean that the slate is thrown away" refers to the principle that a conviction in a district court is not rendered obsolete by an appeal for a trial de novo to a circuit court. Instead, if the appeal for a trial de novo is dismissed, the criminal defendant will still be subject to the district-court conviction. It is in that sense "that the slate is [not] thrown away."

21

There is nothing to indicate, however, that that principle means that all the procedural aspects that occurred in the district-court proceeding are forwarded and applied to the proceeding before the circuit court in conducting a trial de novo. In fact, in the same paragraph of Hulsey from which the phrase relied upon by the Court of Criminal Appeals in the present case originated, the Hulsey court stated:

> "Thus, although '"[a] trial de novo means that the slate is wiped clean and a trial in the Circuit Court is had without any consideration being given to prior proceedings in another court,"' Ex parte Dison, 469 So. 2d 662, 665 (Ala. 1984) (quoting Yarbrough v. City of Birmingham, 353 So. 2d 75, 78 (Ala. Crim. App. 1977)), [overruled on other grounds, City of Dothan v. Holloway, 501 So. 2d 1136 (Ala. 1986),] an appeal for a trial de novo does not mean that the slate is thrown away."

866 So. 2d at 1186 (emphasis added). As noted by Ramirez in his brief before this Court, the Court of Criminal Appeals stated in Dougherty v. City of Moundville, 949 So. 2d 188, 192 (Ala. Crim. App. 2006), "that the term 'trial de novo' is defined as '[a] new trial on the entire case -- that is, on both questions of fact and issues of law -- conducted as if there had been no trial in the first instance.' Black's Law Dictionary 1544 (8th ed. 2004)." (Emphasis added.) Further, in Alabama Department of Revenue

22

v. Greenetrack, Inc., 369 So. 3d 640, 655 (Ala. 2022), this Court stated that,

> "[a]s held by an unbroken line of authority in this state, a trial de novo means a new trial 'as if no trial had ever been had, and just as if it had originated in the circuit court.' Louisville & Nashville R.R. v. Lancaster, 121 Ala. 471, 473, 25 So. 733, 735 (1899); see also, e.g., Ex parte Sorsby, 12 So. 3d 139, 146 (Ala. 2007); Ball v. Jones, 272 Ala. 305, 309, 132 So. 2d 120, 122 (1961)."

(Emphasis added.) It is apparent from Alabama's established authority that an appeal to a circuit court for a trial de novo means that the trial de novo is an entirely new proceeding and is treated as if no trial had ever been conducted in the lower court. That same sentiment is expressed in Ex parte Sorsby and Clark, the cases that Ramirez alleges the Court of Criminal Appeals' decision is in conflict with. See Ex parte Sorsby, 12 So. 3d at 146 ("A trial de novo is '[a] new trial on the entire case -- that is, on both questions of fact and issues of law -- conducted as if there had been no trial in the first instance.' Black's Law Dictionary 1544 (8th ed. 1990)."); and Clark, 357 So. 2d at 677-78 (same).

Based on that more complete understanding of the partial sentence relied upon by the Court of Criminal Appeals in the present case that "an appeal for a trial de novo does not mean that the slate is thrown away,"

23

we hold that the Court of Criminal Appeals erred in concluding that the State's notice filed under § 12-21-301 in the district court was sufficient to give Ramirez notice that the State intended to introduce the DFS certificate of analysis, in lieu of direct testimony, in the trial de novo before the circuit court. The proceeding in the circuit court for a trial de novo is to be treated as if there had not yet been a trial, or any other proceeding, in the district court. It would be inconsistent with our long-established precedent to treat the State's notice under § 12-21-301 filed in the district court as giving sufficient notice to Ramirez of the State's intentions for the trial de novo in the circuit court.

The Court of Criminal Appeals stated in its decision that "Ramirez has not cited any authority that required the State to refile its notice in the circuit court." Ramirez, __ So. 3d at __. The Court of Criminal Appeals also stated that, because the State had given Ramirez notice in the district court under § 12-21-301 that it intended to rely upon the DFS certificate of analysis, in lieu of direct testimony, "there was no logical reason for Ramirez to believe that the State would not rely on the DFS [certificate of analysis] in his trial de novo in the circuit court." Id. at __. The Court of Criminal Appeals, however, overlooked the authority

24

indicating that a trial de novo in the circuit court is a new proceeding, a proceeding that is to be treated as if it originated in the circuit court. That being the case, § 12-21-301 is the only authority that Ramirez needed to rely upon to demonstrate that the State must give the required 40-day notice under that statute in the circuit-court proceeding. Further, the proceeding in the district court involved a guilty-plea conviction and the proceeding in the circuit court involved a jury trial. Regardless of whether the Court of Criminal Appeals agrees with the logic of it, it is certainly foreseeable that Ramirez would wonder if the State had changed its strategy in prosecuting him in front of a jury in the circuit court. Part of the purpose of § 12-21-301 is to ensure that criminal defendants, like Ramirez, are given sufficient notice of the State's intention to rely upon a certificate of analysis, in lieu of direct testimony from the forensic scientist who created the certificate of analysis, so that the criminal defendant can decide how to defend his or her case. Section 12-21-301 requires that the State give such notice "not less than 40 days prior to the commencement of the hearing or trial …." Although the State gave Ramirez notice of its intent to rely on the DFS certificate of analysis, in lieu of direct testimony, in the proceeding before the district court, the

State gave Ramirez no notice of its intent to rely on the DFS certificate of analysis, in lieu of direct testimony, "not less than 40 days prior to the commencement of the … trial" in the circuit court.[1]

---

[1]The State makes a meager argument at the end of its brief that, even if it was error for the circuit court to have admitted the DFS certificate of analysis into evidence, such error was harmless. See the State's brief at 23-24. It is important to note that Ramirez has argued that one of his constitutional rights was violated in this case. In Yeiter v. State, [Ms. SC-2022-0417, Sept. 2, 2022] __ So. 3d __, __ (Ala. 2022), this Court recognized that,

> "in Chapman [v. California, 386 U.S. 18 (1967),] the United States Supreme Court held that the denial of a defendant's federal constitutional right during a criminal trial does not automatically require reversal of a conviction. 386 U.S. at 22. Instead, the Court held that a conviction can be affirmed regardless of the existence of such error if the appellate court is 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.' Id. at 24. The Court indicated that an error is not harmless if '"there is a reasonable possibility that the [error] complained of might have contributed to the conviction."' Id. at 23 (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963)).[2]

> "_____

> "[2] … The Supreme Court in Chapman placed the burden on the state to prove whether the error involved in that case was harmless because it did not contribute to the jury's guilty verdict. 386 U.S. at 25-26. See also Wilson v. State, 874 So. 2d 1155, 1159 (Ala. Crim. App. 2003) (citing Chapman for the proposition that the state has the burden of proving that a violation of a defendant's constitutional right is harmless)."

26

Conclusion

Based on the foregoing, we conclude that Ramirez did not waive his right to argue on appeal that the State failed to give him the required notice under § 12-21-301. The State's notice to Ramirez under § 12-21-301 of its intent to rely upon the DFS certificate of analysis, in lieu of direct testimony, at the scheduled trial in the district court did not satisfy the State's requirement to give Ramirez notice under § 12-21-301 of the State's intent to rely upon the DFS certificate of analysis, in lieu of direct testimony, at the trial de novo in the circuit court. Having received no notice of the State's intent to rely upon the DFS certificate of analysis at the trial de novo in the circuit court, Ramirez was not required to object to the State's relying upon the DFS certificate of analysis during the trial de novo in the circuit court "not later than 30 days prior to the

---

It is the State's burden to prove, beyond a reasonable doubt, that the violation of Ramirez's constitutional right was harmless error. The State does not cite or discuss the standard set forth in Chapman v. California, 386 U.S. 18 (1967), pertaining to whether a violation of a constitutional right may be considered harmless. Based on the State's failure to cite and apply the applicable standard, we need not further consider its harmless-error argument. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008) ("Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived.").

27

commencement of the … trial …." § 12-21-302(a). Accordingly, Ramirez's objection, during the trial de novo in the circuit court, to the State's effort to admit into evidence the DFS certificate of analysis was sufficient to preserve the issue for appellate review. We further conclude that the Court of Criminal Appeals' decision is in conflict with the above-discussed principle relied upon in Ex parte Sorsby and Clark. Accordingly, we reverse the Court of Criminal Appeals' decision and remand the cause to it for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Parker, C.J., and Shaw, Sellers, Stewart, and Cook, JJ., concur.

Wise and Bryan, JJ., dissent.

Mitchell, J., dissents, with opinion.

MITCHELL, Justice (dissenting).

The Court of Criminal Appeals unanimously affirmed the Montgomery Circuit Court's judgment against Christopher Sandon Ramirez. In doing so, it held that, in a trial de novo, the State was not required to give Ramirez a second notice of its intention to introduce a drug-analysis certificate in lieu of live testimony. Ramirez then petitioned this Court for certiorari review, which we granted to consider whether the Court of Criminal Appeals' decision (1) conflicts with Ex parte Sorsby, 12 So. 3d 139 (Ala. 2007), and Clark v. City of Mobile, 357 So. 2d 675 (Ala. Crim. App. 1978), or (2) addresses a material issue of first impression.

After reviewing the record on appeal, I would now quash the writ of certiorari as improvidently granted. In my view, neither the text of § 12-21-301, Ala. Code 1975, nor our precedent requires a second notice in a trial de novo. Because the main opinion holds that it is required, I respectfully dissent.

<u>Background</u>

Law-enforcement personnel arrested Ramirez and acquired blood and saliva samples from him. The Alabama Department of Forensic

Sciences ("DFS") then analyzed those samples, finding that his blood contained both methamphetamine and amphetamines and that his saliva contained methamphetamine. Shortly thereafter, Ramirez was charged with two drug offenses.

While Ramirez awaited trial in the Montgomery District Court, the State filed a "Notice of Discovery to Defendant, Intent to Use Prior Convictions & Bad Acts, Invoke Sentencing Enhancements, Offer Proof By a Certificate, and Motion for Discovery by the State." The notice stated: "Pursuant to Sections 12-21-300 through 303, Code of Alabama, written notice is hereby given of the State's intent to offer proof by a certificate of analysis in lieu of direct testimony. The certificate of analysis is from [DFS] and is included in the provided discovery material."

The district court set Ramirez's trial for January 9, 2020. But on that morning, Ramirez pleaded guilty -- and later that day, he appealed his convictions to the circuit court for a trial de novo. All documents from the district court, including the State's notice to Ramirez, were included in the record that was transmitted to the circuit court. Accordingly, the

State did not serve Ramirez again with the notice it had already provided to him.

After some delays, the circuit court held a jury trial in March 2023. There, the State moved to admit the certificate. Ramirez objected, arguing that the State had failed to give him proper notice under § 12-21-301. Yet, at the same time, he acknowledged that the State had given him notice, saying: "[T]he intent to file that paperwork -- or to use that paperwork with the agent was filed in the district court. This is a trial de novo and it had not been filed in the circuit court." According to Ramirez, because the State did not provide a second notice to him before trial in the circuit court, he was under no obligation to demand live testimony before trial. Therefore, he argued, admitting the certificate at that time would violate his right under the Confrontation Clause of the United States Constitution to cross-examine the certificate's author.

The circuit court overruled Ramirez's objection, concluding that the State's notice complied with § 12-21-301 and that this "notice-and-demand statute" satisfied constitutional requirements. See Bullcoming v. New Mexico, 564 U.S. 647, 666 (2011). The court thus ruled that Ramirez had waived his right to challenge the certificate by failing to

31

timely demand live testimony before trial. The jury subsequently found Ramirez guilty on both counts.

Ramirez appealed to the Court of Criminal Appeals. That court affirmed the circuit court's ruling, holding that the State's notice was timely under the text of § 12-21-301 and that Alabama precedent did not require a second notice.

Ramirez then petitioned this Court, arguing that the courts below had misconstrued Alabama law and erroneously applied precedent. We granted his petition to review the matter further.

<u>Analysis</u>

The State gave Ramirez express notice of its intention to submit a certificate in lieu of live testimony before he pleaded guilty in the district court. Apparently unsatisfied with that notice, Ramirez argues that he was entitled to a <u>second</u> notice before his trial de novo in the circuit court. His argument is wrong and the courts below rightly rejected it. The text of § 12-21-301 does not require more than one notice, and our trial de novo precedent does not require a circuit court to ignore the one already given. Nor would I extend our precedent to hold that the State was required to give Ramirez a second notice here.

A. Conflict

Ramirez argues that the Court of Criminal Appeals' decision conflicts with controlling Alabama precedent. It does not.

### 1. The Text of § 12-21-301 Does Not Require Renewed Notice in a Trial De Novo

I begin with the text of the statute. If the State elects to use a certificate instead of live testimony, § 12-21-301 requires it to provide the defendant notice "not less than 40 days prior to the commencement of the hearing or trial." The State gave timely notice to Ramirez. The ball was then in his court: if he desired live testimony, he needed to request a "show cause" hearing "not later than 30 days prior to the commencement of the hearing or trial." § 12-21-302(a), Ala. Code 1975 (emphasis added). But he made no such request before trial. Instead, he waited until the middle of trial to object to the certificate, which is too late.

Ramirez fails to point to any section of the statute that requires a second notice. And that makes sense: the notice doesn't vanish once given. The Court of Criminal Appeals thus rightly interpreted the statute not to require a second notice.

### 2. Our Trial De Novo Precedent Does Not Require the State to Provide a Second Notice

Instead of relying principally on the text of the statute, Ramirez seeks refuge in our precedent addressing trials de novo. He argues that, because a trial de novo is "'[a] new trial on … both questions of fact and issues of law'" and is "'conducted as if there had been no trial in the first instance,'" the notice provided before his guilty plea in the district court doesn't count in the circuit court. Ramirez's brief at 13 (quoting Dougherty v. City of Moundville, 949 So. 2d 188, 192 (Ala. Crim. App. 2006)); see Ex parte Sorsby, 12 So. 3d at 146. It is true that a trial de novo is an entirely new trial. See Alabama Dep't of Revenue v. Greenetrack, Inc., 369 So. 3d 640, 655 (Ala. 2022) ("As held by an unbroken line of authority in this state, a trial de novo means a new trial 'as if no trial had ever been had, and just as if it had originated in the circuit court.'") (citation omitted)). But, as Ramirez concedes, Alabama precedent does not address notice under § 12-21-301 in the context of a trial de novo. And, importantly, there is precedent that undermines his position.

Alabama precedent does not require a circuit court conducting a trial de novo to categorically ignore what occurred before. For one thing,

34

the Court of Criminal Appeals has noted that, while a trial de novo provides a defendant with a clean slate, that does not mean that "'the slate is thrown away.'" Woodruff v. State, 347 So. 3d 281, 287 (Ala. Crim. App. 2020) (citation and emphasis omitted) (holding that a municipal-court conviction is not erased when a defendant appeals that conviction for a trial de novo). Indeed, our Court has held that a defendant's guilty plea made in district court may be admitted as evidence during a trial de novo in the circuit court. Woods v. State, 261 So. 3d 491, 494 (Ala. 2016) (reasoning that, "because the judgment from the prior court proceeding, and not the defendant's guilty plea, answers the ultimate question posed in the trial de novo -- whether the defendant is guilty of the offense charged -- admission of the judgment, but not of the guilty plea, is prohibited at the trial de novo"). In so holding, we rejected the defendant's arguments that were based on Sorsby's language regarding trials de novo. See id. at 494. And Woods is consistent with Greenetrack because the notice here does not speak to whether the defendant is guilty or not -- he still gets a new trial.

Given these precedents, it is unsurprising that Ramirez fails to show that either Sorsby or Clark requires the State to provide a second

notice in a trial de novo. Although Ramirez understands those cases to stand for the broad proposition that a trial de novo means that a "new trial" is held without regard to "prior proceedings," that reasoning neglects to link the concept of notice to other matters occurring during a trial or proceeding in the district court. See Ramirez's brief at 13. For instance, our Court held in Sorsby that a defendant does not necessarily waive his right to a trial de novo by pleading guilty. 12 So. 3d at 146. And, in Clark, the Court of Criminal Appeals held that a defendant's rights are not violated when a circuit court, in a trial de novo, imposes a greater penalty than the district court. 357 So. 2d at 678. Given these material differences, Sorsby and Clark do not answer the question whether notice under § 12-21-301 must be renewed in a trial de novo.

B. Issue of First Impression

If we instead approach Ramirez's petition as presenting a material issue of first impression, I would decline to extend our trial de novo precedent to cover the notice here. Notice of the State's intent to offer a certificate is fundamentally different than most of what is presented in an earlier proceeding, such as substantive motions, evidence, and arguments to the trial court. As the State notes in its briefing, the sole

purpose of notice is to apprise a party of an operative fact and to give him an opportunity to respond at a later hearing. Once § 12-21-301 notice is given, no further action is required from the court or the State. Indeed, the statute only requires further action from the <u>defendant</u> if he wishes to demand live testimony. <u>See</u> § 12-21-302(a).

Under Ramirez's reasoning, the circuit court would need to engage in a legal fiction that disregards the fact that he <u>knew</u> about the State's intent and imagines that he was surprised by the State's actions solely because he did not receive a second, identical notice in the circuit court. I do not believe our law compels this result. In accordance with § 12-21-301, the State timely notified Ramirez of its intent to offer the certificate in lieu of live testimony. That is all the State was required to do.

In response to this line of argument, Ramirez offers a parade of horribles that amounts to a puny procession. He contends that, if we do not require another written notice in a trial de novo, then "the lower court's filings, rulings, and decisions must be considered in a trial de novo." Ramirez's brief at 17. Not so. Unlike those "filings, rulings, and decisions," § 12-21-301 notice relates to the <u>parties</u>, not the <u>court</u>. While arguments can be remade, substantive motions can be refiled, and

37

evidence may be reintroduced, notice cannot be undone, even by legal fiction. Section 12-21-301 requires notice "not less than 40 days prior to the commencement of the hearing or trial." The State gave that notice to Ramirez well before the deadline and, in my view, was under no obligation to renew it in the circuit court.

<u>Conclusion</u>

Because the Court of Criminal Appeals properly interpreted our statutes and precedents on this issue, I would quash the writ as improvidently granted. I respectfully dissent.